**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Philip Giroux</u>

      v.                              Civil No. 06-cv-250-PB

<u>Town of Danbury, New Hampshire, et al.</u>[1]

**<u>REPORT AND RECOMMENDATION</u>**

Philip Giroux has filed a complaint (document no. 1) pursuant to 42 U.S.C. §§ 1983 & 1985(3) alleging that the defendants have conspired to violate his constitutional and statutory rights. Because Giroux is proceeding both pro se and in forma pauperis, the matter is before the Court for preliminary review to determine whether the complaint states any claim upon which relief might be granted. <u>See</u> 28 U.S.C. § 1915(e)(2); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

---

[1]The plaintiff names the following defendants to this action: The Town of Danbury, Danbury Police Chief Dale Cook, Danbury Police Officer Andrew Ware, Danbury Selectman Twila Cook, Danbury Selectman Steven Gordon, Danbury Workshop, Inc. ("DWI"), DWI Board member James Larkin, DWI Board Chairperson Audrey Pellegrino, DWI Board Treasurer Sara Blay, DWI Director Terri Towle, and Thomas Blay.

Standard of Review

Under this Court's local rules, when a nonincarcerated plaintiff commences an action both pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review and to prepare a report and recommendation determining whether the complaint or any portion thereof should be dismissed because:

> the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915(e)(2); or it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(1)(B). In conducting the preliminary review, the Court construes pro se pleadings liberally. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom

must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3
(1st Cir. 1996) (stating the "failure to state a claim" standard
of review and explaining that all "well-pleaded factual
averments," but not "bald assertions" or "unsupportable
conclusions," must be accepted as true).  This review ensures
that pro se pleadings are given fair and meaningful
consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49
(1st Cir. 1988).

Background

Philip Giroux is a resident of Danbury, New Hampshire
("Town"), a town governed by a Board of Selectmen pursuant to
N.H. Rev. Stat. Ann. ("RSA") 41:2.  The Danbury Workshop, Inc.
("DWI") is a non-profit organization created and incorporated in
1995 by the Town Board of Selectmen to manage and operate the
Danbury Community Center ("DCC").  The DWI board of directors
runs the DCC, which employs a director, staff and volunteers.

Giroux alleges that he previously served as the Facilities
Manager on the DWI Board of Directors, but that he voluntarily
stepped down from that position on May 13, 2003.  Although Giroux
does not specify what events led to his resignation, he does
state that Audrey Pellegrino, the DWI Board Chairperson, agreed

that Giroux's departure from the DWI Board was due, in part, to Giroux's seeming lack of ability or desire to work diplomatically with the Town and with the Board of Selectmen.  Giroux alleges that when he resigned his Board position, he did not intend to stop participating in DCC functions, volunteering at the DCC or completing the coat rack he was making for the DCC at the time of his resignation.

On June 11, 2003, Terri Towle, the DCC director, had a Danbury police officer deliver a letter from Towle and the DWI Board to Giroux asking Giroux not to go to or call the DCC or contact any of the DCC staff.  Giroux has not provided the Court with a copy of the letter and the narrative of the complaint does not reveal Towle's reason or reasons for making this request.

At around the same time, Giroux alleges that Thomas Blay, and his wife Sara, who was the DWI Board treasurer, started a rumor that Giroux was a child molester.  Giroux alleges that this rumor damaged Giroux's standing in the community.  At the end of June 2003, Giroux sent a letter to Pellegrino notifying her of the rumor and denying any involvement in criminal activity.  On July 9, 2003, Pellegrino wrote to Giroux and advised him to ignore the gossip.  Pellegrino also threatened Giroux with "court

4

action" if he did not stop contacting Towle, the DWI Board, and the DCC staff.

On August 3, 2003, Giroux wrote to Pellegrino requesting that the well supplying the Town Hall and DCC with water be monitored according to state law.  Giroux alleges that he was concerned because the well was located too close to two septic tanks according to the relevant state regulations.

On August 12, 2003, Giroux mailed a certified letter to Pellegrino asserting his right to go to the DCC, and requested that she provide him with a reason why he was being denied access to the DCC.  Pellegrino did not respond to Giroux's letter.

On August 26, 2003, the Town Board of Selectmen met.  Giroux requested that the Board of Selectmen assist him in dealing with the DWI Board.  Giroux also attended the meeting to discuss the location of the Town Hall well and the monitoring of the well water.  At that meeting, defendants Steven Gordon and Twila Cook told Giroux that they would not get involved in his dealings with the DCC.  Giroux claims this was an abrogation of their responsibility to protect his rights regarding access to public places in Danbury.

At the August 26 meeting, Giroux was not given an opportunity to clear his name regarding the "child molester" rumors.  In response, he requested that the selectmen amend a building permit that had been granted to Sara Blay to indicate that the Blays were installing radiant heat at their home. Giroux alleges that Thomas and Sara Blay installed radiant heat in their home while claiming that their home was heated only by a woodstove.  This resulted in the Blays' property taxes being falsely lowered, as they were taxed for an "unheated" home rather than a home heated with radiant heat.

On August 27, 2003, Pellegrino mailed a certified letter to Giroux, the Town Board of Selectmen, the Danbury Police Department and the DWI Board members stating that Giroux, as a taxpayer, was entitled to attend adult functions at the DCC, and advised Giroux to stop contacting Towle to avoid prosecution for stalking and harassment.  The letter also stated that Giroux had thrown his keys at Towle, which Giroux denies.  The letter made reference to the rumors that Giroux was a child molester, and stated that due to those rumors and the fact that Giroux was banned from the DCC, parents utilizing the DCC had expressed concern that Giroux might attend or be involved in child

activities at the DCC.  The letter restricted Giroux's presence at the DCC to adult functions, which Giroux alleges conveys an inference that Giroux is a child molester.  The letter did not respond to Giroux's request for an opportunity to clear his name regarding the molestation rumors.

Pellegrino's August 27th letter also assured Giroux that the well that Giroux was concerned about was being appropriately monitored.  Despite these assurances, Giroux contacted the New Hampshire Department of Environmental Services to have the well inspected.  The well was inspected and placed on the New Hampshire Safe Drinking Water Act oversight program in June of 2004.  Giroux's complaint implies that the drinking water in question is unsafe as a result of collusion between Pellegrino and the Board of Selectmen, as it was Pellegrino's brother who did the well's waterline work when the well was drilled.  Giroux alleges that this alleged collusion evidences a complicated system of familial, personal and professional connections between the defendants to this action which have resulted in them conspiring to violate Giroux's rights in retaliation for his outspoken concern with matters relevant to the public concern in

Danbury, such as the Town Hall drinking water or the honesty of the town's elected officials.

On September 2, 2003, the Town Board of Selectmen and the DWI Board met in a closed executive session.  Giroux states that the minutes taken at that meeting indicate that the meeting was held, at least in part, to discuss "the alleged harassment and stalking of Terri Towle, Director of the [DCC], by [Giroux]." Giroux claims that he was not told of the reason for the meeting, and complains that as the meeting affected his right to utilize public spaces, he had a right to be notified of the reason for the meeting.  Giroux asserts that the defendants had an obligation, as state actors, to protect his constitutional rights by giving him notice and the opportunity to be heard prior to depriving him of his right to access public places.

On September 2, 2003, prior to the Executive Session meeting, Thomas Blay alerted the Danbury Police Department that Giroux had assaulted him by poking him in the chest and grabbing his shirt, and that Giroux claimed to be in possession of a gun and a permit to carry a concealed weapon and might be on his way to Town Hall.  Thomas Blay advised the police that he believed that Giroux was bringing a gun to the meeting to be held that

evening at the Town Hall in order to shoot people at the meeting. Giroux admits that on September 2, 2003, the day of the Executive Session meeting, he did apply for a permit to carry a pistol, but states that he did not have the permit at the time of the meeting.  In his application for a permit to carry a gun, Giroux stated that Blay had given Giroux "the finger" on August 29, 2003, that on August 31, 2003, Giroux found a piece of plywood leaning against his truck, which Giroux believed to be "a possible sign from Thomas Blay, or someone hearing about the defamatory rumor that Thomas Blay started, or Audrey Pellegrino."

On September 2, 2003, Giroux was denied access to the Executive Session meeting.  On that evening, Giroux parked his truck in the Town Hall parking lot.  Giroux had affixed signs to his truck disputing allegations that he had engaged in criminal activity and further alleging that Sarah Blay, who was in attendance at the meeting in her capacity as the DWI Board treasurer, was engaged in possible tax fraud.

That evening, outside the board meeting, Giroux was arrested by Chief Cook, without a warrant, on two counts of stalking.  At the time of his arrest, Giroux was not in possession of a gun on his person or in his truck.  The State of New Hampshire took the

9

position, during pretrial litigation in Giroux's criminal
stalking case, that the sign on Giroux's truck was not an act of
political speech entitled to First Amendment protections, but was
"a continuation of threatening behavior to place the board
members in fear that they were going to be shot at [their]
meeting with the selectmen."  Giroux alleges that the information
relied upon by Chief Cook in arresting and charging Giroux was
unreliable and that Cook had reason to know it was unreliable,
inaccurate, and insufficient to form the basis for making an
arrest.  Ultimately, the stalking charges were dismissed by the
Franklin District Court.  Giroux now contends that his arrest and
detention and the bail conditions[2] subsequently imposed were
intended to deny him access to the Town Hall and the DCC and, in
effect, the public road that ran in front of the Town Hall and
the DCC, in retaliation for Giroux's exercise of his right to
free speech and to petition the government for a redress of
grievances by questioning and challenging the actions of the Town
government and its individual officials.

---

[2]Giroux alleges that the following bail conditions were
imposed pursuant to his arrest on stalking charges: (1) Giroux
could not go within 50 yards of Town Hall personnel or their
workplaces; (2) Giroux could not go within 50 yards of DCC
personnel or their workplaces; (3) Giroux could not have any
contact with Towle, Blay, or any member of their families.

10

Giroux further alleges a continuing violation of his rights by Danbury Police officer Andrew Ware, serving in his function as the Danbury Police prosecutor, in failing to assure that probable cause was determined by a magistrate, justice of the peace, or judge within forty-eight hours of Giroux's warrantless arrest. Giroux further alleges that in writing the charging documents, Ware advanced materially false statements in his efforts to secure a criminal stalking action against Giroux.  Giroux charges that Ware and Chief Cook falsely arrested and imprisoned Giroux and engaged in a malicious prosecution.

In a state court civil action undertaken to obtain minutes from the September 2 Executive Session meeting, Towle and two DWI Board members stated during proceedings that Giroux was attempting to obtain the names and ages of children attending DCC programs.  Giroux asserts that his efforts to obtain information about people using the DCC, including how many people were using the preschool and afterschool programs, was to insure that the DCC and Town Hall well was being properly monitored, as he suspected that the Board of Selectmen was providing artificially low numbers to the Department of Environmental Safety.

Giroux states that in 2003, Sara Blay was hired by the DCC to be the DCC's bookkeeper without the Town first posting the job opening, in violation of N.H. Rev. Stat. Ann. § 292:6-a which forbids a non-profit board member from being a paid employee. Also in 2003, Chief Cook appointed his daughter as a police officer in the Danbury Police Department without posting the job opening in violation of state and federal law.  The appointment was approved by Chief Cook's wife, Twila Cook, who was then serving on the Board of Selectmen.  Giroux alleges that this violated the Town of Danbury's obligation, as an equal opportunity employer, to post the job opening prior to hiring. Giroux does not allege how, or whether, these actions affected him or his rights.

## Discussion

Giroux attempts to bring his claims against the defendants under the auspices of 42 U.S.C. §§ 1983 & 1985(3).[3]  Giroux

-----

[3] 42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party

alleges that he was subjected to violations of his federal

constitutional due process rights, his First Amendment rights,

his right to equal protection of the laws, his right to be secure

in his person, and state law right not to be subjected to false

arrest and imprisonment, malicious prosecution, defamation, and

the intentional and negligent infliction of emotional distress.

--------------------

> injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1985(3) states, in relevant part:

> If two or more persons in any State or Territory
> conspire or go in disguise on the highway or on the
> premises of another, for the purpose of depriving,
> either directly or indirectly, any person or class
> of persons of the equal protection of the laws, or
> of equal privileges and immunities under the laws;
> or for the purpose of preventing or hindering the
> constituted authorities of any State or Territory
> from giving or securing to all persons within such
> State or Territory the equal protection of the
> laws; . . . in any case of conspiracy set forth in
> this section, if one or more persons engaged
> therein do, or cause to be done, any act in
> furtherance of the object of such conspiracy,
> whereby another is injured in his person or
> property, or deprived of having and exercising any
> right or privilege of a citizen of the United
> States, the party so injured or deprived may have
> an action for the recovery of damages occasioned
> by such injury or deprivation, against any one or
> more of the conspirators.

1.   Equal Protection Claim

        Giroux has alleged that the defendants conspired to violate his rights as he is a member of the "peasant" class acting to challenge the local government rule.  The Equal Protection clause of the Fourteenth Amendment guarantees that "all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Therefore, in order to establish a claim for an equal protection violation, Giroux would have to allege that the defendants gave differential treatment to persons who were similarly situated to Giroux but who were not members of the "peasant" class, on the basis that he is a member of the peasant class.  Giroux would also have to demonstrate that "peasants" are a distinct group of people presumptively discriminated against and therefore protected by the equal protection clause of the Fourteenth Amendment.  Giroux has failed to do so.

        A "peasant" is defined as "(1) one of a chiefly European class of persons tilling the soil as small landowners or as laborers, or (2) a person of low social status especially when comparatively uneducated or uncouth."  Webster's Seventh New Collegiate Dictionary at 620 (Merriam–Webster 1967).  I can find

14

no recognition by the federal courts of such a class of persons who have been systematically subjected to discrimination and Giroux provides no such authority.  However, even assuming, *arguendo*, that a case could be made that a class of "peasants" exists and merits the protection of the Fourteenth Amendment, Giroux has not alleged sufficient facts to identify himself as a peasant.  Further, Giroux has not identified any facts upon which the Court could conclude that in acting as alleged, any of the defendants was motivated by Giroux's social status, education, or his degree of couth.  Accordingly, as Giroux has not alleged any facts upon which an Equal Protection claim might succeed, I recommend that the claim be dismissed from this action.

2.   Due Process Claims

     The Fourteenth Amendment protects an individual from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  The proscription against such a deprivation applies to municipalities and municipal agencies. DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (citing Home Tel. & Tel. Co. v. City of Los Angeles, 227 U.S. 278, 286–87 (1913)).

               The Due Process clause has both procedural and
               substantive components.  In its procedural aspect,

15

> due process ensures that government, when dealing
> with private persons, will use fair procedures.  In
> its substantive aspect, due process safeguards
> individuals against certain offensive government
> actions, notwithstanding that facially fair
> procedures are used to implement them.

DePoutot, 424 F.3d at 118 (internal citations omitted).

    A.   Procedural Due Process

    Giroux voluntarily resigned from the DCC board.  Giroux

alleges, however, that he did not agree to discontinue his role

as a volunteer at DCC events, which included participation in

adult events, chaperoning field trips for children, and building

a coat rack and other items for the DCC.  Giroux alleges that he

was denied procedural due process when he was terminated from his

volunteer position based on false rumors that he was a child

molester.  Giroux further alleges that those rumors damaged his

standing in the community, and that he was not given an adequate

opportunity to clear his name.

    Giroux's procedural due process claim is dependent in the

first place on his having a property interest in his position at

the DCC.  See Bd. of Regents of State Colls. v. Roth, 408 U.S.

564, 569 (1972).  Neither the Supreme Court or the First Circuit

has ever held that public employment would include a volunteer

position.  <u>Lynch v. City of Boston</u>, 180 F.3d 1, 14 (1st Cir. 1999).

Giroux's property interest in his volunteer position is protected by the Due Process clause only if he can demonstrate that his property interest rises "to the level of a legitimate claim of entitlement sufficient to trigger due process protections."  <u>Acevedo-Feliciano v. Ruiz-Hernandez</u>, 447 F.3d 115, 121 (1st Cir. 2006).  The complaint is silent with respect to referencing any contract, rule or policy that would have given rise to a legitimate expectation that Giroux was constitutionally entitled to continuing in his volunteer position unless he was terminated pursuant to some established procedure.  Accordingly, I cannot find that Giroux has alleged any procedural due process claim arising out of his termination, and I recommend that the claim be dismissed.

 B. <u>Substantive Due Process</u>

Giroux's complaint next tries to assert a substantive due process claim against the defendants for their actions in effecting his arrest on September 2, 2003.  A substantive due process violation claim against the executive authority of a municipality, such as a law enforcement officer, must allege that

17

the challenged conduct of the official in question "shocks the contemporary conscience." DePoutot, 424 F.3d at 18 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). "Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." Depoutot, 424 F.3d at 119 (citing Amsden v. Moran, 904 F.2d 748, 757 (1st Cir. 1990)).

Giroux alleges that the law enforcement officers in question responded to a report that Giroux might be at the Town Hall meeting with a gun to shoot attendees at that meeting. The officers responded by arresting Giroux, who was not carrying a gun on his person or in his truck, on stalking charges arising at least in part from the presence of a sign accusing one of the meeting attendees of possible tax fraud. Giroux further alleges that the law enforcement defendants detained and prosecuted him on these charges, but due to the fact that no proper stalking charge had been alleged, his arrest and detention were without probable cause and his prosecution was malicious. These facts, if true, amount, at most, to erroneous legal decisions or law enforcement overreaching. They do not involve the kind of "stunning" or "egregious" behavior required to state a

substantive due process claim.   Accordingly, I recommend that
any intended substantive due process violation against the law
enforcement defendants be dismissed from this action.

     C.   <u>Defamation/Name-Clearing Hearing</u>

     Giroux alleges that the termination of his position on the
DCC board and subsequent dismissal as a DCC volunteer occurred
contemporaneously with defamatory comments being made and spread
about him by Thomas Blay in conjunction with other defendants.
"[D]efamation, even from the lips of a government actor, does not
in and of itself transgress constitutionally assured rights."
<u>Wojcik v. Mass. State Lottery Comm'n</u>, 300 F.3d at 92, 102 (1st
Cir. 2002) (citing <u>Pendleton v. Haverhill</u>, 156 F.3d 57, 62-63
(1st Cir. 1998) and <u>Paul v. Davis</u>, 424 U.S. 693, 700-01 (1976)).
However, excepted to this rule is the circumstance where a
public-sector employer "creates and disseminates a false and
defamatory impression about an employee in connection with the
employee's discharge." <u>Wojcik</u>, 300 F.3d at 103.  In such
circumstances, a public employer is required to provide the
employee with an adequate name-clearing opportunity and the
failure to do so is actionable as a due process violation under §
1983.  <u>Id.</u> (citing <u>Codd v. Velger</u>, 429 U.S. 624, 627-28 (1977)).

While Giroux has stated that he was not discharged from the DWI Board, but resigned voluntarily, he also alleges that the defamatory statements in question were made in connection with the dissolution of his relationship with the DWI Board and the DCC.  However, as stated earlier, Giroux has not alleged facts that suffice to establish that he had a property interest in his volunteer position at the DCC that entitled him to the protection of the constitution for circumstances surrounding the loss of the position.  I therefore recommend that any claim for a denial of due process occasioned by the denial of a name-clearing hearing be dismissed.

3.   First Amendment Claims

     The First Amendment states that "[c]ongress shall make no law . . . abridging the freedom of speech or of the press . . ." U.S. Const. amend. I.  Freedom of speech is "among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action."  Lovell v. City of Griffin, Ga., 303 U.S. 444, 450 (1938).  There is no question that Giroux's display of a sign questioning the legality of the actions of a public figure, or of the safety of government-maintained facilities, is protected speech.  This

20

right is enforceable against police officers who, by their
official actions, suppress this right instead of protecting it.
"[U]ncontrolled official suppression of the speaker 'cannot be
made a substitute for the duty to maintain order.'" Edwards v.
South Carolina, 372 U.S. 229, 245 (1963) (quoting Hague v.
C.I.O., 307 U.S. 496, 516 (1939)).

    Further, the First Amendment's guarantee of a right to
petition the government for a redress of grievances has been
characterized as "among the most precious of the liberties
safeguarded by the Bill of Rights." United Mine Workers v. Ill.
State Bar Ass'n, 389 U.S. 217, 222 (1967).  Giroux alleges that
his efforts to address the well conditions and his complaints
regarding the legality of the Blays' building permit were efforts
to petition the Town in order to seek a remedy of his grievances
as a person with an interest in the public spaces and the conduct
of public officials in the town where he lived.

    In order to recover under § 1983 for a violation of First
Amendment rights, a plaintiff must allege that the defendant
intended to inhibit speech protected by the First Amendment,
Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994), and that his
"speech was in fact chilled or intimidated."  Sullivan v.

<u>Carrick</u>, 888 F.2d 1, 4 (1st Cir. 1989).  Giroux alleges that his
First Amendment rights were abridged by his arrest on stalking
charges when Giroux was appearing in a public place and engaging
in constitutionally protected speech, and that his arrest was
intended to retaliate against him for the exercise of his right
to speak freely and his right to petition the government for a
redress of grievances.

Giroux's allegations give rise to a cause of action against
the officers for what could be construed as a willful suppression
of Giroux's constitutionally protected speech, and further, that
their actions in fact chilled or intimidated Giroux's speech as
he was removed from the location and not permitted to continue
his protest.  Accordingly, I will direct that the First Amendment
claims alleging an abridgement of Giroux's right to free speech
and to petition the government for a redress of grievances may
proceed against Danbury Police Chief Dale Cook and Danbury Police
officer Andrew Ware in an Order issued simultaneously with this
Report and Recommendation.

4.   <u>Failure to Protect</u>

Giroux alleges that he sought the assistance of Twila Cook
and Steven Gordon in redressing his problems with the DCC and the

DWI Board on August 26, 2003.  Giroux does not identify what

legal right he feels that these defendants violated by refusing

to intervene on his behalf with the DWI board.  As no such right

is apparent on the face of the facts alleged, I recommend that

this claim be dismissed.

5.   Illegal Seizure of Person Claims

     A.   False Arrest

     Giroux alleges that he was arrested without a warrant and

without probable cause and that therefore his arrest, detention,

and subsequently-imposed bail conditions violated his

constitutional right to be secure in his person as guaranteed by

the Fourth and Fourteenth Amendments.  While Giroux has referred

to these claims in a number of ways, to the extent that he

intends to cite the lack of probable cause for his arrest as the

reason for a constitutional violation, his arrest-related claims

are properly viewed as stating a claim for a violation of his

right to be free from an unreasonable seizure.  Pena-Borrero v.

Estremeda, 365 F.3d 7, 12 n.8 (1st Cir. 2004) (citing Camilo-

Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998)) ("The right to be

free from unreasonable seizure (and, by extension, unjustified

arrest and detention) is clearly established in the jurisprudence

23

of the Fourteenth Amendment (through which the Fourth Amendment
constrains state action).").  The right to be free from
unreasonable seizure is actionable pursuant to the Fourth
Amendment's guarantee of an individual's "right 'to be secure in
their persons . . . against unreasonable . . . seizures' of the
person."  <u>Pena-Borrero</u>, 365 F.3d at 12; <u>see</u> <u>Graham v. Connor</u>, 490
U.S. 386, 394 (1989).  "The constitutionality of a warrantless
arrest 'depends . .. upon whether, at the moment the arrest was
made, the officer [] had probable cause to make it.'"  <u>Logue v.</u>
<u>Dore</u>, 103 F.3d 1040, 1044 (1st Cir. 1997) (quoting <u>Beck v. Ohio</u>,
379 U.S. 89, 91 (1964)).  Probable cause to make an arrest exists
if the facts and circumstances of which the arresting officer is
aware "are sufficient to lead an ordinarily prudent officer to
conclude that an offense has been, is being, or is about to be
committed" by the arrestee.  <u>Logue</u>, 103 F.3d at 1044.  The Fourth
Amendment requires that the States provide "a fair and reliable
determination of probable cause as a condition for any
significant pretrial restraint of liberty . . . the probable-
cause determination 'must be made by a judicial officer either
before or promptly after arrest.'" <u>Baker v. McCollan</u>, 443 U.S.
137, 142-43 (quoting <u>Gerstein v. Pugh</u>, 420 U.S. 103, 125 (1975)).

Construing the complaint liberally, I find that Giroux has
alleged that no timely and appropriate determination of probable
cause was made in his case, and that when an impartial judicial
officer did finally examine the case, he determined that no
charge had been stated against Giroux and dismissed the case.
Giroux complains of his arrest, his detention, and his bail
conditions.  Accordingly, I find that Giroux attempts to state a
false arrest claim against the arresting officer, Chief Cook and
Officer Ware, the officer who supported the arrest and provided
information to Chief Cook in order to assist Cook in effecting
the arrest.

While it may ultimately prove true that the officers were
aware of enough facts to make an arrest based on probable cause,
if Giroux's allegations are construed liberally, as they must be
for purposes of preliminary review, Giroux describes an arrest
made without probable cause.  Initially, Giroux contends, he was
stopped and searched by the police on suspicion that he was
armed, but the police found no weapon on his person or in his
vehicle.  Giroux claims he was then arrested for "stalking,"
because he was standing outside a town meeting in a public place
with a sign on his truck accusing a public official of possible

tax fraud.  Giroux alleges, therefore, that he was arrested for simply exercising his free speech rights and not on the basis of conduct amounting to probable cause to believe any criminal activity was afoot.  Accordingly, I find that Giroux has stated the minimum facts necessary to allege that his warrantless arrest was without probable cause and therefore violated the Fourth Amendment.  In an Order issued contemporaneously with this Report and Recommendation, I will direct that the False Arrest claim be served on Chief Cook and Officer Ware.

   B.   False Imprisonment

   Giroux alleges that due to his unconstitutional arrest, he was held in custody, and then restricted by bail conditions, before the charges against him were dismissed.  Giroux alleges a separate "false imprisonment" claim as a result of being detained or subject to restrictive conditions of release for that period. To the extent that Giroux intends to state a false imprisonment claim separate from his false arrest claim, based on allegations of improper detention and bail conditions, he is attempting to state an action against the arraigning judge and the prosecutor.[4]

---

   [4]Giroux has named the prosecutor, Andrew Ware, but not the judge, as a defendant to this action.  Liberally construing the complaint, however, I find that Giroux has attempted to bring

Because, as discussed below, I find that both of these defendants are immune from suit based on Giroux's allegations, I recommend the false imprisonment claim be dismissed from this action.

      C.   Malicious Prosecution

    In order to state a malicious prosecution claim that is cognizable under § 1983, a plaintiff must establish that the criminal charges at issue resulted in some deprivation of liberty consistent with the concept of seizure.  Britton v. Maloney, 196 F.3d 24, 28-29 (1st Cir. 1999), cert. denied, 530 U.S. 1204 (2000).  Malicious prosecution claims are cognizable under § 1983 if they allege a violation of the Fourth Amendment.  See Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001).  Giroux alleges that the prosecution of the charges against him was conducted in a manner that unreasonably delayed the dismissal of the case because no impartial judicial officer was afforded the opportunity to make a determination of probable cause in a timely fashion.  This claim, liberally construed, attempts to allege a malicious prosecution claim against the police prosecutor responsible for seeking such a determination.  The malicious

---

suit against the judicial officer who set his bail conditions without first properly making a determination that probable cause existed to hold Giroux for prosecution.

prosecution cause of action permits damages for a deprivation of
liberty pursuant to a legal process; the plaintiff must establish
that (1) the criminal action was initiated and instigated by the
defendant or defendants, (2) the prosecution culminated in favor
of the plaintiff, (3) the defendant or defendants acted with
malice and absent probable cause, and (4) the plaintiff suffered
damages.  Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st
Cir. 1999).  The First Circuit has concluded that a plaintiff
cannot "bring a malicious prosecution claim based upon his arrest
because his arrest [did] not constitute the 'initiation of the
proceedings' against [the plaintiff]," and that a warrantless
arrest, as was the arrest here, could not be the basis of a
malicious prosecution claim because it did not constitute legal
process.  Id. at 89.  Therefore, Giroux cannot bring a malicious
prosecution claim based on the lack of probable cause for his
arrest.  Accordingly, this claim, if it is to survive, rests
solely on his allegation that the prosecutor or judge
unreasonably seized his person after the initiation of criminal
proceedings by holding him on unreasonable bail, or failing to
proceed quickly with the preparation and ultimate dismissal of
the criminal charges.  Again, because I find that both of these

28

defendants are immune from suit for these claims, I recommend the malicious prosecution claim be dismissed from this action.

    D.    Prosecutorial and Judicial Immunity

    Absolute immunity from suit has been extended to those who perform official functions in the judicial process, including judges, prosecutors, and others acting under color of law during the judicial process.  Briscoe v. LaHue, 460 U.S. 325, 334 (1983).  The initiation of criminal charges, setting of bail, preparation of a criminal case by investigation, and ultimately the decision to dismiss a case are judicial functions taken in the normal course of a criminal prosecution.  I find that no individual acting in the role of prosecutor or judge in this case is alleged to have committed acts that would render him or her amenable to suit for their actions.  Accordingly, I recommend that the false imprisonment claim alleged against defendant Ware in his prosecutorial capacity, and the unnamed judicial officer who was responsible for setting bail conditions in Giroux's case be dismissed from this action.

6.    Conspiracy – Section 1985(c) Claim

    Giroux alleges a claim against the defendants under 42 U.S.C. § 1985(3), which creates a private cause of action "for

29

injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'"  <u>Diva's Inc. v. City of Bangor</u>, 411 F.3d 30, 38 (1st Cir. 2005) (citing <u>Burns v. State Police Ass'n of Mass.</u>, 230 F.3d 8, 12 n.3 (1st Cir. 2000) (quoting 42 U.S.C. § 1985(3))).  To state a claim under § 1985(3), the plaintiff must allege that the conspiratorial conduct complained of was motivated by some "racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  <u>Aulson</u>, 83 F.3d at 3 (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 91 (1971)).

As previously discussed, Giroux has not alleged that he is a member of any constitutionally protected class of persons or that he was otherwise the object of any kind of invidious discrimination by the defendants.  Because Giroux does not allege facts sufficient to state a § 1985(3) civil rights action against the defendants, I recommend that this claim be dismissed for failure to establish the subject matter jurisdiction of this Court.

7.   <u>Failure to Post Job Openings</u>

Giroux alleges that in 2003, the DWI Board filled a job opening that they were legally required to post without making the required posting.  Giroux further alleges that in 2003 Danbury Police Chief Cook appointed his daughter to the Danbury Police Department, again without posting the job opening as required, and that Chief Cook's wife, Twila Cook, approved the appointment in her position as a member of the Board of Selectmen.

In all stages of federal judicial proceedings, the parties must have a personal stake in the outcome of the action.  <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998) (internal citations omitted).  This means that Giroux's complaint must allege some injury to himself that could be redressed by a favorable judicial decision.  <u>Id.</u>  A suit is moot if it fails to present a live case or controversy.  <u>Jackson v. Coalter</u>, 337 F.3d 74, 79 (1st Cir. 2003).  Giroux's claim challenges the procedure that resulted in certain job postings and hiring decisions that occurred in Danbury in 2003.  Giroux has not stated how he was affected or injured by those actions, or how any injury to himself could be redressed by a favorable judicial decision in this matter.

31

Giroux has alleged only that the actions in question were
generally against the law.  I find, therefore, that Giroux has
not presented a live case or controversy for this Court to
resolve regarding these claims and I recommend they be dismissed.

8.   State Law Claims

     Giroux has alleged several state law tort claims based on
the same facts alleged in support of his civil rights claims.
Under 28 U.S.C. § 1367, this Court may exercise supplemental
jurisdiction over state law claims that arise out of the same
facts and circumstances as those alleged to give rise to the
federal claims properly before the Court.

     Because this court has original federal question
jurisdiction of the First Amendment and false arrest claims
pursuant to 28 U.S.C. § 1331, I will exercise jurisdiction over
the pendant state law claims arising out of the facts that give
rise to those claims, as I find they form part of the same case
or controversy pursuant to 28 U.S.C. § 1367.  Specifically, I
will, in the Order issued simultaneously with this Report and
Recommendation, direct that the defendants served with the
federal claims also be served with the state claims alleging
false arrest, and the intentional and negligent infliction of

emotional distress.  As I find that facts giving rise to the other state claims alleged do not give rise to any federal cause of action, I recommend that the state tort claims of defamation, false imprisonment, and malicious prosecution be dismissed without prejudice to refiling in the state court.

9.   Claims Against Thomas Blay

The United States Constitution "erects no shield against merely private conduct, however . . . wrongful."  Blum v. Yaretsky, 457 U.S. 991, 1002 (1982).  A plaintiff claiming an infringement of his civil rights by individual defendants must establish that (i) the defendants deprived plaintiff of a right secured by the Constitution or laws of the United States, and that (ii) the defendants acted under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia."  42 U.S.C. § 1983; see Andresen v. Diorio, 349 F.3d 8, 13 (1st Cir. 2003).  In relation to the second requirement, a private actor can be held to be a state actor under only three circumstances: "(i) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (ii) where the

private party has exercised powers that are 'traditionally the exclusive prerogative of the state,' or (iii) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert that the action of the private party must in law be deemed to be that of the state." Lewis v. Law-Yone, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993) (quoting Blum, 457 U.S. at 1004); see also Jackson v. Metro. Edison Co., 419 U.S. 345, 357 (1974).

Here, Giroux has alleged that Thomas Blay reported actions to the Danbury Police which resulted in Giroux's arrest, that Thomas Blay was married to a member of the DWI Board, and that he had contact and conversations that defamed Giroux with town officials and employees.  None of these allegations are sufficient to allow this action to proceed against Thomas Blay as a de facto state actor.  While he may have agreed with or even requested that certain state actions be taken against Giroux, Blay did not act as a state actor in any of the incidents discussed in Giroux's complaint.  Accordingly, I find that the claims against Thomas Blay do not invoke the subject matter jurisdiction of this Court and I recommend that he be dismissed from this action.  Fed. R. Civ. P. 12(h)(3); LR 4.3(d)(1)(B)(i).

34

10.  Municipal Liability

Under 42 U.S.C. § 1983, a municipality may be liable for damages to a plaintiff "who is subjected to a deprivation of his constitutional rights as a result of official action taken pursuant to a 'custom or usage' of the municipality." Mahan v. Plymouth County House of Corr., 64 F.3d 14, 16 (1st Cir. 1995) (citing Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Although in some instances a single incident of constitutional deprivation may provide "some proof" of a municipal policy, "a single incident is insufficient, in and of itself, to establish a municipal 'custom or usage'." Mahan, 64 F.3d at 16; see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) (proof of single incident by lower level employees does not establish either an official policy or custom).  In this instance, where I find that the only constitutional claims properly alleged by Giroux concern a single incident -- his November 2, 2003 arrest, I find that he has failed to allege any widespread policy, custom or practice sufficient to allege the liability of the Town of Danbury or any of the Town defendants in their official capacities.

11. <u>Supervisory Liability</u>

Supervisory liability under § 1983 cannot be based on a respondeat superior theory, but instead must arise from a supervisor's own acts or omissions.  <u>See</u> <u>Bowen v. City of Manchester</u>, 966 F.2d 13, 20 (1st Cir. 1992).  To state a claim against the Danbury selectmen, the board members of the DCC, or the Danbury Police Chief in their individual supervisory capacities, Giroux must show that the individual supervisor was a "primary actor involved in" or "prime mover behind" the misconduct of his or her inferior.  <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be an affirmative link between the supervisor's activity and the harm suffered by the plaintiff.  <u>Id</u>. at 44.  Here, Giroux has stated his First Amendment and false arrest claims against Chief Cook in his individual capacity.  Giroux has not described how any supervisory person was responsible for or primarily involved in any of the claims which I am directing be served in my Order issued this date.  Accordingly, I recommend dismissal of the supervisory liability claims alleged by Giroux.

<u>Conclusion</u>

In an Order issued simultaneously with this Report and Recommendation, I direct that the federal First Amendment claims, the federal False Arrest claim, and the state law false arrest and intentional and negligent infliction of emotional distress claims, be served on defendants Dale Cook and Andrew Ware.  I recommend that the remaining claims and defendants be dismissed from this action as they fail to state any claim upon which relief might be granted.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauth. Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13–14 (1st Cir. 1992); <u>United States v. Valencia–Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date:     October 31, 2006

cc:       Philip Giroux, pro se