UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2006 DEC 18  P 12: 30

```
-------------------------------------------------------------X
PHILIP GIROUX,                         )
                                       )
              Plaintiff,               )
                                       )
       -against-                       )       DOCKET #  06-cv-250-PB
                                       )
TOWN OF DANDURY,  NEW HAMPSHIRE,       )
et al.                                 )
                                       )
              Defendants,              )
                                       )
-------------------------------------------------------------X
```

## OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, PURSUANT TO F.R.C.P. 72  AND L.R. 7.2 (e)

NOW COMES the plaintiff, Philip Giroux, a *pro se* litigant, and respectfully

Objects to the Magistrate Judge's report and recommendations.  Plaintiff submits the

following arguments:

## ARGUMENT FOR EQUAL PROTECTION CLAIM

1.      Report and Recommendation ('REPORT'), at 14, avers that for an Equal

Protection claim to be established a plaintiff must allege the following elements: (1)

"defendants gave differential treatment to persons who were similarly situated"; and

(2) that plaintiff belongs to "a distinct group of people presumptively discriminated

against and therefore protected by the equal protection clause of the Fourteenth

Amendment."

1

2.      REPORT at 14 averred "[t]he Equal Protection clause of the Fourteenth
Amendment guarantees that all persons similarly situated should be treated alike.
City of Cleburne, Tex. V. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)."
(quotations omitted).  Plaintiff's Complaint, paragraph 50, alleges that plaintiff was
treated differently from persons who were similarly situated.  REPORT is not
dismissing this claim for failure of fulfilling the first elemental requirement.

3.      REPORT, at 15, is dismissing this claim for the following reasons: (1) "peasants"
are not a "class of persons who have been subjected to discrimination"; (2) plaintiff
"has not alleged sufficient facts to identify himself as a peasant"; and (3) plaintiff "has
not identified any facts upon which the Court could conclude that in acting as alleged,
any of the defendants was motivated by [plaintiff's] social status, education, or his
degree of couth."

4.      REPORT at 15, avers that the federal courts do not recognize "peasants" as "a
class of persons who have been systematically subjected to discrimination".

5.      Plaintiff is arguing that the term "peasant" was misinterpreted.  The word
"peasant" was mistakenly isolated from the whole phrase "a peasant, bold enough to
question the ruling/governing class", which should be given a Constitutional
interpretation.  "The Framers of our Bill of Rights were aware and took account of the
abuses that led to the [English] 1689 Bill of Rights."  Browning-Ferris Industries v.
Kelco Disposal, 492 U.S. 257, 267 (1988).  In using the word "peasant', plaintiff was
referring to how the peasants were repressed if they were bold enough to question the
King.

6.    Plaintiff will be more technically correct by amending his complaint, pursuant to F.R.C.P. 15 (b), to aver that he is a citizen of the Town of Danbury, instead of a "peasant", who was bold enough to question the ruling/governing class, which would also correct the fact that plaintiff failed to "allege sufficient facts to identify himself as a peasant."  See: Plaintiff's Complaint, paragraph 7.

7.    REPORT, at 15, averred plaintiff did not allege any facts that defendants were motivated by plaintiff's "social status, education, or his degree of couth", which was based upon the Court's definition of peasant.

8.    Plaintiff is arguing that paragraphs 35 through 49 of his Complaint does allege that defendants belonged to the ruling/governing class, and defendants were motivated by the fact that plaintiff was bold enough to question them on the issue of monitoring the DCC/Town Hall well.

9.    Plaintiff's Complaint, paragraph 49, claims state action, stalking charges and bail conditions, were used to violate plaintiff's Fourteenth Amendment right to Equal Protection of the Laws.

10.    Plaintiff is arguing that Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987); Dennis v. Sparks, 449 U.S. 24(1980);  and Adickes v. Kress & Co., 398 U.S. 144 (1969) should govern this claim.  Plaintiff's Complaint, paragraphs 35 through 48, alleges enough circumstantial evidence and plaintiff can provide additional circumstantial evidence for a jury to make a decision pertaining to whether defendants DCC, Terri Towle, Audrey Pellegrino, Sara Blay, and James Larkin were willful

3

participants in joint activity with the Danbury Police. See: <u>Wagenmann</u>, at 210

("there was considerable circumstantial evidence to suggest that Anderson exerted

influence on the authorities to have Wagenmann removed from circulation"); <u>Dennis</u>

at 27 (citing: <u>Adickes</u>, at 152) ("As the Court of Appeals correctly understood our

cases to hold, to act 'under color of' state law for [42 U.S.C. 1983] purposes does not

require that the defendant be an officer of the State. It is enough that he is a willful

participant in joint action with the State or its agents.").

11.     Plaintiff is arguing that since the state action used were bail conditions, his Equal

Protection claim can not be dismissed until the jury has decided whether the

"outcome sought" by the bail conditions were for a "legitimate governmental

purpose" or were the bail conditions "imposed for the purpose of punishment". <u>Bell</u>

<u>v. Wolfish</u>, 441 U.S. 520, 538 (1978). See also: Argument for Excessive Bail below.

12.     In support of plaintiff's above argument, plaintiff is also arguing that the ruling of

<u>Village of Willbrook v. Olech</u>, 528 U.S. 562 (2000), should govern this case. A class

of one can be alleged if the plaintiff alleges he was "intentionally treated differently

from others similarly situated and that there is no rational basis for the difference in

treatment. … the purpose of the equal protection clause of the Fourteenth Amendment

is to secure every person within the State's jurisdiction against intentional and

arbitrary discrimination, whether occasioned by express terms of a statute or by its

improper execution through duly constituted agents." <u>Id</u>, at 564 (brackets and

citations omitted).

4

13.     Plaintiff's Complaint, paragraph 33, avers the defendants claim the state interest was to protect the DCC board of directors and staff members from plaintiff's harassing and threatening behavior.

14.     Stalking and Harassment charges were brought against plaintiff, but were dismissed for infringing upon his Freedom of Speech.

15.     Plaintiff is arguing that there was no legitimate state interest to treat him differently and a "peasant" or citizen has an elemental constitutional premise to challenge the local government rule, regarding health and safety issues that exist on Town owned property.

16.     Plaintiff's Complaint, paragraph 49, avers that he was oppressed for being bold enough to question the ruling/governing class and references paragraphs 35 through 38, which avers plaintiff was insisting the dismissed defendants monitor the DCC/Town Hall well according to law and plaintiff had to contact Department of Environmental Services ('DES'), who did place the well onto DES' "oversight program".

17.     Plaintiff is arguing that before this Equal Protection claim can be dismissed, the jury has to decide the dispute regarding whether the defendants had a legitimate state interest, regarding plaintiff allegedly threatening and harassing the DCC board members and staff or was plaintiff being intentionally and arbitrarily discriminated against for challenging the local government, regarding addressing their health and safety issues, the monitoring of the DCC/Town Hall well.

## ARGUMENT FOR DUE PROCESS CLAIM

### A.  Procedural Due Process

18.    REPORT, at 16-17, dismisses plaintiff's Due Process claim by averring "[n]either the Supreme Court or the First Circuit has ever held that public employment would include a volunteer position", citing Lynch v. City of Boston, 180 F.3d 1, 14 (1st Cir. 1999).

19.    Plaintiff is arguing that this case differs from Lynch for the following reasons: (1) Lynch is a case dealing with a volunteer being terminated in retaliation for exercising a constitutional right, freedom of speech, and it is not a case dealing with a defamatory rumor associated with the termination; (2) Lynch is a case dealing with a Hunger Commission and it is not a case dealing with a community center that was incorporated to serve the townspeople and become one of the leading centers for the Town of Danbury's social activities; and (3) Lynch, is a case that was ruled upon a qualified immunity defense based upon the settled law issue and it is not a case dealing with a settled law claim where qualified immunity should fail.

20.    Plaintiff is arguing that defamation of any person is illegal and it is settled law. See: NHRSA 644:11 (criminal defamation); and NHRSA 626:8, IV ("An accomplice in conduct can be found criminally liable for causing a prohibited result, provided the result was a reasonably foreseeable consequence of the conduct and the accomplice acted purposely, knowingly, recklessly, or negligently with respect to that result, as required for the commission of the offense.").

21.     Plaintiff is arguing the defamatory rumor would have been given no credibility
had the defendants not breached their duties articulated in plaintiff's Complaint,
paragraphs 51 through  59.

22.     Plaintiff is also arguing that the issue of defaming his reputation was settled law
"[f]or where a person's good name, reputation, honor, or integrity is at stake because
of what the government is doing to him, notice and an opportunity to be heard are
essential." Board of Regents v. Roth, 408 U.S. 564 (1971).  And the government has
an interest in protecting a private individual's reputation.  See: Gertz v. Welch, Inc.,
418 U.S. 323, 344 (1973).

23.     Plaintiff is arguing that the government was involved with furthering this
defamatory rumor.  As stated in plaintiff's Complaint, paragraphs 24 and 148, the
Danbury Police delivered the aforementioned letter of June 11, 2003, and later
recommended bail conditions that gave further credibility to the defamatory rumor.
Plaintiff repeats and realleges each and every allegation contained in paragraphs 9 and
10 above as if fully set forth herein.

24.     REPORT, at 17, dismisses plaintiff's procedural due process claim for he failed to
reference "any contract, rule or policy that would have given rise to a legitimate
expectation that [plaintiff] was constitutionally entitled to continuing in his volunteer
position unless he was terminated pursuant to some established procedure."

25.     Plaintiff contests the above REPORT finding and he argues that his Complaint,
paragraph 21, averred that plaintiff was deprived of "liberties shared by all other

similarly situated citizens of the town, the liberty of participating and volunteering at the DCC." "Liberty under law extends to the full range of conduct which the individual is free to pursue, and it can not be restricted except for a proper governmental objective." Bolling v. Sharpe, 347 U.S. 497, 499-500 (1953). See also: Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1984).

26.     Plaintiff is arguing that the Procedural Due Process claim can not be dismissed until the jury decides whether there was a "proper governmental objective" to restrict plaintiff's liberties of participating and volunteering at the DCC, which was incorporated to be the Town of Danbury's center for social activity.

27.     Plaintiff will amend his Complaint, pursuant to F.R.C.P. 15 (b), to include evidence found in defendant Ms. Pellegrino's letter of July 9, 2003, and plaintiff's letter of August 12, 2003, referenced in plaintiff's Complaint, paragraphs 27 and 28, respectively.

28.     A plaintiff must allege "a legitimate claim of entitlement" to the benefit. Redondo-Borges v. U.S. Dept., Housing, Urban Dev., 421 F.3d 1, 8 (1st Cir. 2005); Board of Regents v. Roth, 408 U.S. 564, 577 (1971). Plaintiff's amended Complaint will argue that he has a legitimate claim to finish a project that reflects upon his reputation as a contractor. The unfinished coat rack and defamatory rumor discredited plaintiff's newly established cabinet-making company. See: Board of Regents v. Roth, 408 U.S. 564, 571 (1971) ("liberty" and "property" "relate to the whole domain of social and economic fact"). This argument can be found in plaintiff's letter of August 12, 2003.

29.     Another argument that plaintiff's amended complaint will allege concerning his
legitimate claim of entitlement to finishing his volunteer project, putting hooks on the
coat rack, will be that the defamatory rumor dishonored his American Indian Give-
Away that he offered to the DCC.  It has been definitely stated that a person has a
liberty interest, protected by the Fourteenth Amendment, "to worship God according
to the dictates of his own conscience".  Board of Regents v. Roth, 408 U.S. 564, 572
(1971).  This argument can be found in Ms. Pellegrino's letter of July 9, 2003, where
she acknowledges plaintiff's Native American beliefs, and plaintiff's letter of August
12, 2003, where the American Indian Give-Away is mentioned.

## B. Substantive Due Process

30.     REPORT, at 18-19, dismissed plaintiff's Substantive Due Process claim because
the conduct of the officials does not reach "shock the contemporary conscience" level.
This Court ruled that at most the false arrest was an erroneous legal decision or law
enforcement overreaching.

31.     Plaintiff contests the above REPORT finding.  In United States v. Salerno, 481
U.S. 739 (1986), the Court evaluated the Bail Reform Act under both the Due Process
Clause and Eighth Amendment.  Plaintiff is arguing that it is still common policy of
the courts to evaluate pretrial detainee treatment and conditions of his restraint under
the Fourteenth Amendment's Due Process clause.  See: Robles v. Prince George's
County, Maryland, 302 F.3d 262, 269 (4th Cir. 2002);  Wilson v. Seiter, 501 U.S. 294,
297 (1990) (citing: Robison v. California, 370 U.S. 660, 666 (1962)).

32.    Plaintiff is arguing that before his Substantive Due Process claim can be dismissed, the jury has to decide whether the bail conditions were for a "legitimate governmental purpose" or were the bail conditions imposed as a form of punishment because plaintiff was bold enough to question the ruling/governing class. "The touchstone of due process is protection of the individual against arbitrary action of government".  County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting: Wolff v. McDonnell, 418 U.S. 539, 558 (1974); and citing: Daniels v. Williams, 474 U.S. 327 (1985)).

33.    Plaintiff argues that this case reflects Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987), in regards to a weapon and plaintiff's alleged homicidal intentions.  See: Wagenmann, at 202.  Instead of trying to prevent plaintiff from attending a wedding, as in Wagenmann, at 201, plaintiff was prevented from attending a Closed Executive Session, about him, and bail conditions were imposed to show him who was master. Bail conditions not only prevented him from access to the DCC, but now restricted his liberties of access to the Town Hall, attending Town Meetings, and Town functions.

34.    Plaintiff is arguing that his Substantive Due Process claim cannot be properly dismissed until the jury has determined whether there was a "proper governmental objective" to restrict plaintiff's liberties of participating and volunteering at the DCC and whether there existed "a legitimate governmental purpose" for the bail conditions or was plaintiff being oppressed for questioning the local ruling/governing class.

### C.  Defamation/name-clearing hearing

35.      REPORT, at 20, avers the name-clearing hearing should be dismissed for plaintiff

failed to provide a liberty interest in his volunteer position.

36.      Plaintiff is contesting the above REPORT finding and he is arguing that his

aforementioned Equal Protection and Due Process arguments, paragraphs 2, 25, 28,

and 29 above, do provide a liberty interest in his volunteer position, which is

protected by the constitution.

### ARGUMENT FOR FAILURE TO PROTECT

37.      REPORT, at 23, dismissed plaintiff's failure to protect claim on the grounds that

plaintiff failed to "identify what legal right he feels that these defendants violated by

refusing to intervene on his behalf".

38.      Plaintiff contests the above REPORT finding and is arguing that his Complaint,

paragraph 68, does identify the Fourteenth Amendment as the legal right in which

defendants Twila Cook and Steven Gordon violated.

39.      Plaintiff will amend his Complaint, pursuant to F.R.C.P. 15 (b), to expand on his

Complaint, paragraph 12, to include that the DCC leases the building, for a dollar a

year, from the TOWN OF DANBURY, so it can manage and operate the TOWN OF

DANBURY'S building/community center, which should support plaintiff's

Fourteenth Amendment liberty rights to participate and volunteer at the DCC.

40.     Plaintiff is also arguing that his Complaint, paragraphs 63 through 67,

demonstrates the required "meeting of the minds" element of his Fourteenth

Amendment claims.  See: Wagenmann v. Adams, 829 F.2d 196, 211 (1987).

41.     Plaintiff is also waiting for the New Hampshire Supreme Court to decide whether

the DCC is an agent for the TOWN OF DANBURY.  And plaintiff is arguing that he

can not properly amend his complaint until that state litigation is resolved.

## ARGUMENT FOR EXCESSIVE BAIL

42.     REPORT, footnote at 26, avers plaintiff "has named the prosecutor, Andrew

Ware, but not the judge, as a defendant to this action.  Liberally construing the

complaint, however, [the Court] find[s] that [plaintiff] has attempted to bring suit

against the judicial officer who set his bail conditions".

43.     Plaintiff acknowledges that judicial officers have absolute immunity and he denies

any attempt to bring suit against an unnamed judicial officer.

44.     Plaintiff is arguing that his Complaint, paragraph 150, clearly states plaintiff has

brought suit against defendants Chief Dale Cook and Andrew Ware, for the excessive

bail conditions.

45.     Plaintiff has not found any Federal court cases stating that a person filing an

Objection to Amending Bail Conditions is not acting in a prosecutorial capacity.  And

plaintiff is not contesting defendant Ware's prosecutorial immunity defense in a 42

U.S.C. 1983 claim.

46.     Plaintiff is arguing that defendant Ware's filing of the Objection to Amend Bail

        conditions was a continuance of the official policy to oppress plaintiff, which is an

        element of the 42 U.S.C. 1985, conspiracy, claim, which defendant Ware does not

        have prosecutorial immunity.

47.     Plaintiff is arguing that defendant Chief Cook does not have absolute immunity

        when he "recommended and received the following unusual, disproportionate, and

        excessive bail conditions".   Plaintiff's Complaint, paragraph 145.

48.     Plaintiff is contesting REPORT, at 29, which avers "[t]he initiation of criminal

        charges, setting of bail … are judicial functions" that are granted absolute immunity.

49.     Plaintiff is arguing that a 42 U.S.C. 1983 claim "should be read against the

        background of tort liability that makes a man responsible for the natural consequences

        of his actions."  Wagenmann v. Adams, 829 F.2d 196, 212 (1st Cir.1987), quoting

        Monroe v. Pape, 365 U.S. 167, 187, and citing Springer v. Seaman, 821 F.2d 871, 877

        (1st Cir. 1987).

50.     Plaintiff is arguing that the initiation of criminal charges is not a judicial function

        that is granted absolute immunity.  REPORT, at 29, is relying upon the ruling of

        Briscoe v. LaHue, 460 U.S. 325, 334 (1983).  However, the United States Supreme

        Court followed the tradition of the English and American courts, referenced in

        Briscoe at 351, by following the background of tort liability in Malley v. Briggs, 475

        U.S. 335 (1985), police officers applying for an arrest warrant were only given

        qualified immunity, and in Kalina v. Fletcher, 522 U.S. 118, 129 (1997), prosecutors

were only given qualified immunity when they are acting as a complaining witness, apply for an arrest warrant, which is the initiation of criminal charges.

51. Plaintiff is arguing that a police officer participating in the setting of bail conditions, by presenting evidence and recommending bail conditions, is not acting in a judicial function that is granted absolute immunity. See: Wagenmann v. Adams, 829 F.2d 196, 212-213 (1987) (citing Restatement (Second) of Torts $ 442 (1965), and Malley v. Briggs, 475 U.S. 335 (1985), when it was declared that a police officer could be held liable for excessive bail.

52. Plaintiff is arguing that the aforementioned RESTATEMENT'S first and second considerations are met in this case. The bail commissioner's "lone source of information about the arrestee, was in all probability the cause of the ruling made by this intervening agent." And the bail commissioner's "reliance on the facts and recommendation furnished to him by [defendant Chief Dale Cook] was routine - to be expected by all concerned." Wagenmann, at 212. See also: New Hampshire Practice & Procedure Handbook, New Hampshire Bar Association, 2004, pg. CR-16 ("ln practice, the bail commissioner often sets the amount of bail requested by the police.")

53. Plaintiff is arguing that before the excessive bail claim is dismissed, the jury needs to determine the aforementioned RESTATEMENT'S third consideration, what "precisely [was] the outcome sought by [defendant Chief Dale Cook]"? Wagenmann, at 213.

14

54.     Plaintiff is arguing that the jury has to decide whether the "outcome sought" by
the bail conditions were for a "legitimate governmental purpose" or were the bail
conditions "imposed for the purpose of punishment". Bell v. Wolfish, 441 U.S. 520,
538 (1978).

55.     Plaintiff is arguing that bail conditions restricting a person from the Town Hall,
Town meetings, and Town functions can be considered a form of punishment.  See:
Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1962) ("forfeiture of citizenship
and the related devices of banishment and exile have throughout history been used as
punishment … [and banishment] was always adjudged a harsh punishment even by
men who were accustomed to brutality in the administration of criminal justice")
(citations and quotations omitted).

56.     Plaintiff is arguing that the jury, in deciding whether the bail conditions were
imposed for a legitimate governmental goal, must consider whether the bail
conditions were "arbitrary or purposeless". Bell v. Wolfish, at 539.  "[T]he
punitive/regulatory distinction turns on whether an alternative purpose to which [the
restriction] may rationally be connected is assignable for it, and whether it appears
excessive in relation to the alternative purpose assigned [to it]." United States v.
Salerno, 481 U.S. 739, 747 (1986) (citing: Kennedy v. Mendoza-Martinez, 372 U.S.
144, 168-169 (1963) (quotations omitted).

57.     Plaintiff is arguing that his Complaint, paragraph 146, does demonstrate excessive
bail conditions, which restricted his liberty pertaining to access to the Town Hall,
Town Meetings, Town functions, and a public road.  Plaintiff was only found guilty

for allegedly having an unprivileged contact with his neighbor, who has nothing to do with the Town Hall, or the DCC, and who testified that plaintiff "poked [him] in the chest and then grabbed [him] by the shirt. **It didn't hurt or anything**".  Simple Assault Trial Transcript, at 11:12-14. Emphasis added.

58.     Plaintiff is arguing that his bail conditions were "arbitrary and were purposeless". Plaintiff's bail conditions restricted his liberty of driving on a public road, past the Town Hall and DCC, while his neighbor, who was not hurt by the alleged unprivileged contact, was driving by plaintiff's house on a regular basis.

59.     Plaintiff is arguing that the bail conditions were "arbitrary and had no purpose" other than to punish plaintiff for questioning the local ruling/governing class. Plaintiff's Complaint, paragraph 144 and 149, parallels <u>Wagenmann</u>, at 213, in regards to plaintiff being a "responsible citizen" in the following manner: (1) plaintiff, in the past, was never accused of any violent crimes; (2) plaintiff contacted Department of Environmental Services to get the DCC/Town Hall well monitored according to law; (3) plaintiff made sure the DCC director, who plaintiff was allegedly stalking and harassing, was comfortable with him working across the street from her house, and the DCC director made the averment that she had no issues with plaintiff working across the street from her house; and (4) plaintiff was donating materials and his labor, building a dollhouse so it could be donated to the DCC, which the bail conditions were allegedly protecting.

## ARGUMENT FOR MALICIOUS PROSECUTION CLAIM

60.     REPORT, at 28, dismissed plaintiff's malicious prosecution claim and avers plaintiff's warrantless arrest did not constitute legal process for the "arrest did not constitute the 'initiation of the proceedings' against [the plaintiff]" and plaintiff is attempting to bring suit against the prosecutor and judge.

61.     Plaintiff is contesting the above REPORT finding.   Plaintiff understands the court's position and why it does not apply the rulings of Malley v. Briggs, 475 U.S. 335 (1985), to a warrantless arrest: an application for arrest warrant was not filed. However, plaintiff was arraigned and plead not guilty.  Plaintiff is arguing that the criminal proceedings were initiated against him in this warrantless arrest.  See: Crain v. United States, 162 U.S. 625 (1895) ("due process of law requires that the accused plead, … before his trial can rightfully proceed"); McNamara, Richard B. New Hampshire Practice Volume 1 Criminal Practice and Procedure. Lexis Nexis; 4th Ed.; pg. 359 (the arraignment is "the procedure by which an individual is provided with notice of the charges against him"); and NHRSA 592-A:7 ("Criminal proceedings before a district court shall be begun by complaint").

62.     Plaintiff is arguing that defendant Ware owes a duty to plaintiff to insure probable cause was determined by a justice of the peace or judge.  Defendant Ware does not have "prosecutorial immunity" for initiating the criminal proceedings, filing the complaint, and Malley v. Briggs, 475 U.S. 335 (1985) should govern this claim.

## ARGUMENT FOR CONSPIRACY - 42 U.S.C. 1985 (3) CLAIM

63.     REPORT, at 30, dismisses plaintiff's 42 U.S.C. 1985 (3) claim for the following

reasons: (1) plaintiff failed to allege "he is a member of any constitutionally protected

class of persons"; and (2) plaintiff failed to allege he was "the object of any kind of

invidious discrimination by the defendants."

64.     Plaintiff contests the above REPORT finding and he argues that his above Equal

Protection argument does aver plaintiff is "a member of a constitutionally protected

class."  Plaintiff is a citizen of the Town of Danbury and he does have a constitutional

premise to question his local ruling/governing class: especially when it is concerning

health and safety issues on Town owned property.

65.     Plaintiff is arguing that his Conspiracy claim cannot be properly dismissed until

the jury has determined whether plaintiff was invidiously discriminated against when

the jury determines whether there was a "proper governmental objective" to restrict

plaintiff's liberties of participating and volunteering at the DCC and whether there

existed "a legitimate governmental purpose" for the bail conditions or were the bail

conditions "imposed for the purpose of punishment" because plaintiff was bold

enough to question his local ruling/governing class, regarding addressing the Town's

health and safety issues.

## ARGUMENT FOR STATE LAW CLAIMS

66.     Plaintiff retains the right to challenge the other state law claims based upon the

aforementioned Equal Protection and Due Process arguments.

## ARGUMENT FOR CLAIMS AGAINST THOMAS BLAY

67.    REPORT, at 34, avers plaintiff's complaint "alleged Thomas Blay reported
actions to the Danbury Police Department which resulted in plaintiff's arrest" and this
action does not constitute "Thomas Blay as a de facto state actor."

68.    Plaintiff contests the above REPORT finding and plaintiff argues that he does
have a 42 U.S.C. 1983 claim against Thomas Blay and there is a "sufficiently close
nexus between the state and the challenged action of the private party so that the
action of the party may be fairly treated as that of the state itself." As stated in
plaintiff's Complaint, paragraph 108, "[t]he sign on plaintiff's truck was a motivating
and substantial factor in plaintiff's arrest for two counts of stalking." Plaintiff's
Complaint, paragraph 112 also references paragraphs 68, and 82 through 87, which
alleges defendant Chief Dale Cook used the arrest to place excessive bail conditions
onto plaintiff. Furthermore, plaintiff's Complaint, paragraph 136, alleges defendant
Officer Ware misrepresented the stalking charges.

69.    Plaintiff is arguing that his Complaint, paragraphs 115 through 126 emphasized
the word **believes** because the jury has to decide whether Thomas Blay believed the
information to be true or whether he knew the information was false, concerning
plaintiff's alleged intentions of bringing a gun to the Town Hall. See:
RESTATEMENT (Second) of Torts $ 653, cmt. g, referenced in Dobbs, Dan B. The
Law of Torts. West Group: St. Paul, Minn., 2000; pg. 1218.

70.     Plaintiff is also arguing that the jury has to decide whether Thomas Blay acted

with malice when he contacted the police concerning plaintiff's alleged intentions of

bringing a gun to the Town Hall.  Plaintiff's Complaint, paragraph 114, does allege

that Thomas Blay acted with the improper purpose of interfering with plaintiff's

Freedom of Speech.  See:  RESTATEMENT (Second) of Torts $ 668, referenced in

Dobbs, Dan B. The Law of Torts.  West Group: St. Paul, Minn., 2000; pg. 1223.

71.     Plaintiff also argues that he does have a 42 U.S.C. 1985 (3) claim against Thomas

Blay and the jury has to decide whether defendants Terri Towle, Audrey Pellegrino,

and Sara Blay "took measures to increase their safety" by parking in front of plaintiff,

after plaintiff allegedly just "assaulted" Thomas Blay and lead him to "**believe**"

plaintiff was bringing a gun to their meeting with the selectmen.  See: Plaintiff's

Complaint, paragraph 136.

72.     Plaintiff is arguing that the jury has to decide whether a conspiracy was in action

when Thomas Blay contacted the police.  Prior to parking in front of plaintiff and

before Thomas Blay called the police, defendants Thomas Blay, Sara Blay, Terri

Towle, and Audrey Pellegrino, had communications with each other.  See: Plaintiff's

Complaint, paragraphs 125 and 126.

73.     Plaintiff is arguing that Thomas Blay played a major role in depriving plaintiff of

his Freedom of Speech and other constitutional deprivations.  See: Plaintiff's

Complaint, paragraphs 112 through 114.

## ARGUMENT FOR MUNICIPAL LIABILITY

72.     REPORT, at 35-36, dismissed the Town of Danbury from this lawsuit because

Chief Cook was not alleged to be a final decision maker for the Town of Danbury's

police department's actions. See: Plaintiff's Complaint, paragraph 61, alleges the

selectmen as the final decision makers and they were dismissed from this lawsuit.

73.     Plaintiff will amend his Complaint, paragraphs 61, 75, and 98, pursuant to

F.R.C.P. 15 (b), to allege defendant Chief Dale Cook, acting in his official capacity,

and as final decision maker for the Danbury Police department.

74.     Plaintiff did not submit a Motion to amend his Complaint with this Objection

because plaintiff  will be sending a letter, pursuant to F.R.C.P. 15 (b), to defendants',

Chief Dale Cook's and Andrew Ware's attorney, requesting their consent to the

aforementioned amendments referenced in this Objection.

        WHEREFORE, based upon all the foregoing, I Philip Giroux, a *pro se* litigant,

respectfully requests that this Honorable Court Grant the following relief:

A.     Allow plaintiff to join the other defendants that Magistrate Judge James R.
       Muirhead dismissed from this lawsuit;

B.     Accept plaintiff's Equal Protection claim;

C.     Accept plaintiff's Due Process claims;

D.     Accept plaintiff's Failure to Protect claim;

E.     Accept plaintiff's Excessive Bail claim;

F.     Accept plaintiff's Malicious Prosecution claim;

G.     Accept plaintiff's 42 U.S.C. 1985 (3) claim;

H.   Reconsider plaintiff's State Law claims;

I.   Accept plaintiff's claim against Thomas Blay;

J.   Allow plaintiff time to Amend his Complaint, pursuant to F.R.C.P. 15 (b); and

K.   Grant such further relief as justice may require.


Dated: _____ day of December, 2006
Danbury, New Hampshire

_____
PHILIP J. GIROUX, *pro se*
135 School Pond Road
Danbury, NH 03230
(603) 768-5647


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____        _____
     DATE                              SIGNATURE


CERTIFICATION

I hereby certify that a copy has been mailed, first class to, defendants Chief Dale Cook and Andrew Ware's Attorney, Daniel J. Mullen of Ransmeier & Spellman Professional Corporation, 1 Capitol Street, PO Box 600, Concord, New Hampshire 03302-0600 on this 18th day of December 2006.

_____
Philip J. Giroux, *Pro Se*
135 School Pond Road
Danbury, NH 03230
Phone: (603) 768-5647

22